**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **MATTHEW HECKLER, *et al.*,** | : | |
| | : | **CIVIL ACTION** |
| Plaintiffs, | : | |
| | : | |
| **v.** | : | |
| | : | |
| **WHOLE FOODS MARKET,** | : | **NO. 25-3682** |
| | : | |
| Defendant. | : | |

**Perez, J.** **November 19, 2026**

**MEMORANDUM**

Plaintiffs Matthew Heckler and Antonia Lucia Heckler bring this premises liability action against Defendant Whole Foods Market Group, Inc. ("Whole Foods") following Mr. Heckler's fall in the produce department of Whole Foods's Plymouth Meeting, Pennsylvania, store. Plaintiffs allege that moisture associated with the store's produce misting system, together with improperly positioned floor matting, created a dangerous walking surface that caused Mr. Heckler to slip and fall. Whole Foods disputes that a hazardous condition caused the fall and contends that Plaintiffs cannot establish that it created or had notice of any such condition.

Two motions are before the Court. Whole Foods moves to exclude the testimony of Plaintiffs' engineering expert, Keith A. Bergman, ECF No. 32, and separately seeks summary judgment, ECF No. 31. The Court must decide whether Bergman reliably applied engineering principles to the photographs, witness accounts, safety guidance, and surveillance footage in the record. The summary judgment motion asks a different question: whether the admissible record, with reasonable inferences drawn in Plaintiffs' favor, would permit a jury to find negligence under Pennsylvania law. For the reasons that follow, the motion to exclude will be granted in part and denied in part, and the motion for summary judgment will be denied.

The Court addresses both motions in this Memorandum Opinion because they arise from the same evidentiary record and present related questions concerning the cause of Mr. Heckler's fall. Moreover, the admissibility of Bergman's opinions bears directly on the evidence available to Plaintiffs in opposing summary judgment. The Court, therefore, considers the motion to exclude first and then determines whether the remaining admissible evidence, viewed in the light most favorable to Plaintiffs, establishes a genuine dispute of material fact warranting trial.

## I. BACKGROUND

The material facts are described in the light most favorable to Plaintiffs for purposes of Rule 56. The Court does not adopt the parties' interpretations of disputed video footage or photographic evidence as findings of historical fact.

On June 21, 2024, Heckler worked at Whole Foods's Plymouth Meeting, Pennsylvania, store as the meat department team leader. He clocked out shortly after 1:00 p.m. and remained in the store to purchase groceries. Def.'s Statement of Undisputed Material Facts ("SUMF") ¶¶ 8–10. Heckler left his cart and walked to a produce display referred to as the "wet wall" or "wet rack," which contained herbs and other produce sprayed intermittently by a misting system. A floor mat, referred to throughout the record as a "PIG mat," lay in front of the display. *Id.* ¶¶ 11–14. Mr. Heckler selected produce, turned toward his cart, and fell. *Id.* ¶¶ 14, 20–21.

Heckler described the incident with uncertainty about its precise mechanics. He testified that his left foot slipped as he was stepping off the mat, although he was "not exactly sure what caused the slip." Heckler Dep. at 74:9–23 (quoted in ECF No. 31-3 at 6; *see also* ECF No. 35 at 2). He believed he was moving from the mat to the concrete, or was only partly off the mat, and acknowledged that he had not been watching his feet. Heckler Dep. at 79:16–23, 86:12–19 (quoted in ECF No. 31-3 at 6). He did not recall a pool of standing water. *Id.* at 77:22–24. He did, however,

describe the mat as darker and damp, recalled "misty" droplets around the mat, and noticed "shininess" on the concrete. *Id*. at 76:24–78:12, 80:7–15, 87:5–7 (quoted in ECF No. 31-3 at 6–7). Asked what had made his foot slip, he answered that it went out from under him "due to some sort of moisture." *Id*. at 87:19–23 (quoted in ECF No. 35 at 2).

The record also contains evidence complicating that account. Whole Foods personnel who responded to the fall did not observe water on the floor. Produce supervisor Robert Shivick testified that he checked the area and found no wetness. Shivick Dep. at 23:5–10 (excerpts attached to Pls.' Opp'n Mot. Exclude ("Opp. Mot. Exclude")). The store's incident materials referred to a prior knee problem, and store leader Andrew Fritton recalled that Heckler said his knee had given out. Bergman Report ("Bergman Rep.") at 2, 7 (summarizing incident report and Fritton Dep. at 41). Heckler had undergone a right knee replacement in December 2023; records from June 2024 described continuing complications and a possible revision procedure. SUMF ¶¶ 28–36. The fall resulted in a displaced femur fracture. *Id.* ¶ 21. Whether Heckler's knee condition caused or contributed to the fall—or instead exacerbated the resulting injuries—remains disputed.

The parties disagree about what the surveillance footage establishes. Plaintiffs contend that the wet-wall misters activated about every six minutes and that moisture visibly extended beyond the produce case toward the mat and adjacent walking surface. Pls.' Resp. SUMF ¶ 19; Opp. Mot. Exclude at 10–11. Whole Foods responds that the equipment was designed to direct mist onto produce; Shivick testified that he had not seen mist extend as far from the display as Plaintiffs suggest. ECF No. 32-2 at 3, 9; Shivick Dep. at 56:12–18. Plaintiffs also acknowledge that a produce case partly obscures the location of the fall and that the recording quality is limited. Pls.' Resp. SUMF ¶ 11. The Court, therefore, does not treat the claimed route of the mist or the precise position of Heckler's foot as indisputable facts.

Other evidence connects the mat to the risk of moisture. Assistant store leader Carly Ward testified that the mat was intended to absorb water and help prevent slips in an area that could become wet. Ward Dep. at 80–81 (as summarized in Bergman Rep. at 11). Shivick similarly acknowledged that if water struck the mat, it could become wet; a shoe stepping on a wet mat could become wet; and a person wearing a wet shoe could encounter a slippery adjacent hard floor. Shivick Dep. at 57:13–59:23. Those answers arose from hypothetical questions. They do not amount to an admission that water actually traveled that route on the day of the fall.

Photographs taken after the incident show matting extending under the produce case. Bergman Rep. at 21–22. Bergman interprets a visible discoloration or line on the concrete as evidence that the mat once extended farther into the customer aisle. *Id.* at 22. Whole Foods disputes the conclusions drawn from the photograph. The photograph documents the mat's depicted position, not the mat's earlier position, the presence of water, or the cause of the accident.

Bergman prepared a report dated May 27, 2026. He reviewed witness depositions, photographs, the surveillance recording, discovery responses, and safety publications. *Id.* at 1–4, 19–31. The produce area was renovated, however, before he could inspect it in its original condition. *Id.* at 18; Opp. Mot. Exclude ¶¶ 27–28. His report addresses ASTM F1637-13, ANSI/ASSE A1264.2-2006, and National Safety Council guidance concerning walkway mats, including their use in produce aisles and the need to inspect their condition. Bergman Rep. at 20–27. He ultimately concluded that the mat was improperly placed, that water reached the concrete, that Whole Foods's actions or inactions caused the fall, and that Heckler's actions did not. *Id.* at 28–31. Whole Foods seeks to exclude the report and all resulting opinions. ECF No. 32-2 at 11.

## II. LEGAL STANDARDS

### A. Expert testimony

Federal Rule of Evidence 702 requires the proponent of expert testimony to demonstrate that it is more likely than not that the expert is qualified, the proposed testimony would assist the trier of fact, the testimony rests on sufficient facts or data, the expert used reliable principles and methods, and the opinions reflect a reliable application of those principles and methods. Fed. R. Evid. 702; Fed. R. Evid. 104(a). The 2023 amendment makes explicit that sufficiency of an expert's basis and reliable application are questions of admissibility for the Court, not invariably questions of weight for the jury. Fed. R. Evid. 702 advisory committee's note to 2023 amendment.

The Court's inquiry encompasses qualification, reliability, and fit. *Daubert v. Merrell Dow Pharmaceuticals, Inc*., 509 U.S. 579, 589–95 (1993); *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147–52 (1999); *UGI Sunbury LLC v. A Permanent Easement for 1.7575 Acres*, 949 F.3d 825, 832–34 (3d Cir. 2020). Reliability is a flexible inquiry. An engineer need not perform every conceivable test, and practical experience, inspection of records, and application of recognized industry guidance may supply good grounds for a properly limited opinion. *Pineda v. Ford Motor Co*., 520 F.3d 237, 247–49 (3d Cir. 2008). The flexibility of that inquiry does not permit an expert's assurance to substitute for a reasoned connection between evidence and conclusion. *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997); *Oddi v. Ford Motor Co*., 234 F.3d 136, 145–46, 158 (3d Cir. 2000); *see also Cohen v. Cohen*, No. 21-2997, slip op. at 4–12 (3d Cir. Jan. 8, 2025) (requiring meaningful findings on reliability and fit).

The analysis must be opinion-specific. A witness may be qualified to evaluate walkway safety without being qualified to reconstruct the biomechanics of an accident. Similarly, an engineer's reliable identification of a risk does not automatically establish a reliable opinion that the risk caused a particular injury. The Court may admit the former while excluding the latter. Rule

704 does not bar an opinion merely for touching an ultimate issue, but experts may not instruct the jury on the governing law or supply legal conclusions in place of the Court's instructions. *Berckeley Inv. Grp., Ltd. v. Colkitt*, 455 F.3d 195, 217–18 (3d Cir. 2006).

**B. Summary Judgment and Pennsylvania law**

Rule 56 directs entry of summary judgment when there is no genuine dispute of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The Court draws reasonable inferences in favor of the nonmoving party without weighing credibility or choosing between permissible competing accounts. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248, 255 (1986). A defendant may discharge its initial burden by showing an absence of evidence on an essential element; the plaintiff must then identify evidence from which a reasonable jury could find in the plaintiff's favor. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–25 (1986). An inference must rest on evidence, not conjecture.

Pennsylvania substantive law governs this diversity action. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938). Under Restatement (Second) of Torts § 343, which Pennsylvania follows, a possessor of land may be liable to an invitee for a dangerous condition when the possessor knew or should have discovered it, should anticipate that invitees would not recognize or avoid the danger, and failed to use reasonable care to protect them. *Carrender v. Fitterer*, 469 A.2d 120, 123–24 (Pa. 1983). The occurrence of a fall is not itself proof of negligence. *Martino v. Great Atl. & Pac. Tea Co*., 213 A.2d 608, 610 (Pa. 1965).

Notice depends in part on how the condition arose. If the possessor or its agents created a harmful transitory condition, the invitee need not separately prove notice. A condition known to recur frequently may also support a finding of actual notice. If, instead, an isolated hazard was created by an unidentified third party, the plaintiff ordinarily must establish that the owner knew or should have learned of it in time to respond. *Moultrey v. Great A & P Tea Co*., 422 A.2d 593,

596–97 (Pa. Super. Ct. 1980); *Myers v. Penn Traffic Co.*, 606 A.2d 926, 929–31 (Pa. Super. Ct. 1992) (en banc); *Marshall v. Brown's IA, LLC*, 213 A.3d 263, 270 (Pa. Super. Ct. 2019). Whether a plaintiff has proved creation or recurrence remains a separate question from whether a fall occurred in an area generally prone to moisture.

## III. MOTION TO EXCLUDE BERGMAN

### A. Qualifications and Proper Scope

Bergman's professional background qualifies him to offer engineering testimony about pedestrian travel surfaces, the purpose and use of mats, and safety practices relevant to wet walkways. His curriculum vitae describes civil engineering work encompassing walkway evaluations, construction safety, and applicable standards. Opp. Mot. Exclude, Ex. B (Bergman CV at 1–3). Whole Foods does not seriously contest that foundation; its principal challenge concerns method and application. ECF No. 36 at 1–2. The qualification inquiry, therefore, does not end the analysis, although it identifies a legitimate field in which Bergman can assist the jury.

### B. Mat Placement and Safety Practices

The report offers an identifiable method for assessing mat placement. Bergman examines photographs showing how much of the mat extended beneath the display and relates that configuration to guidance addressing mats in known wet areas, the tracking of moisture from mats to hard flooring, and inspection practices. Bergman Rep. at 20–27. Bergman's report also cites ASTM F1637-13. The provisions reproduced there address the use of mats in wet or contaminated interior locations and safe transitions to adjoining surfaces. *Id.* at 21. The National Safety Council guidance likewise addresses mat use in produce aisles and inspection of mat condition. *Id.* at 23–25. Those principles have a logical application to a produce aisle equipped with a misting system and protective matting.

Whole Foods argues that Bergman did not test the particular mat or establish a mandatory standard requiring another foot of coverage. ECF No. 32-2 at 7, 10. These objections constrain the conclusions Bergman may draw, but they do not justify excluding all of his walkway-safety testimony. The geometry of a mat visible in a photograph can be evaluated without a coefficient-of-friction test. Engineering guidance may inform reasonable safety practices even when it does not command an exact dimension. *Pineda*, 520 F.3d at 247–49. Accordingly, Bergman may explain the purposes of mats, the hazards associated with tracking moisture onto smooth flooring, the industry guidance on placement and inspection, and why matting partly beneath the display would offer less exposed walking coverage than matting farther into the aisle.

Two limitations follow. First, the report treats a line or discoloration on the floor as proof of the mat's earlier position. Bergman Rep. at 22. Without an explanation excluding other plausible causes of the discoloration or otherwise establishing the mat's history, he may describe the visual feature and its possible significance, but may not present a past displacement as a verified fact. Second, the cited standards do not, on this record, supply a demonstrated legal command that this particular mat extend exactly one additional foot. ASTM provisions concerning building entrances cannot be transplanted wholesale into a produce aisle without explanation. Bergman may discuss relevant recommendations and their application; he may not convert every recommendation into a statutory or regulatory violation.

**C. Misting System, Moisture Migration, and Slip Resistance**

The more difficult issue is the proposed inference that water traveled from the misters, escaped the display's airflow, contacted the mat, migrated or transferred to the concrete, and remained in an amount sufficient to cause a slip. Whole Foods identifies the absence of measurements, specifications, airflow modeling, absorbency testing, and surface friction testing. ECF No. 32-2 at 4–10. Bergman also did not examine the original equipment because the produce

department had been renovated. Those omissions matter most to an opinion purporting to establish the detailed pathway and quantity of moisture.

The missing tests are not, by themselves, dispositive. Bergman could consider visual evidence, eyewitness observations, and the known function of the equipment. In addition, Shivick conceded under questioning that water reaching a mat could wet it, that wet footwear could result, and that a wet shoe could slip on the adjacent hard floor. Shivick Dep. at 57:13–59:23. Those conditional propositions supply a plausible mechanism; they do not establish that every condition in the hypothesized chain occurred. The competing interpretations of the surveillance footage reinforce the distinction between a possible physical mechanism and a quantitatively demonstrated one.

The Court finds the foundation sufficient for Bergman to explain general engineering principles about mat coverage, moisture tracking, and why a wet transition between two different surfaces can present a safety concern. He may also testify conditionally about the implications of facts the jury finds, such as whether mist reached the mat or concrete. The foundation is insufficient, however, to permit a definitive engineering claim that this system delivered a particular volume of water past its air curtain, that water necessarily reached Heckler's point of contact, or that the resulting floor necessarily crossed a measurable threshold of unsafe slip resistance. Those stronger assertions are not established by the methods identified in the report. *See Joiner*, 522 U.S. at 146; *Oddi*, 234 F.3d at 158.

### D. Limitations on Bergman's Causation Opinions

Bergman goes farther still. He states that Heckler did not cause the incident, that Whole Foods did, and that the fall would have been avoided had the mat been placed or maintained differently. Bergman Rep. at 28–31. Those conclusions are expressed in terms of certainty that the underlying investigation does not support.

The record contains conflicting evidence about the mechanism of the fall. Heckler perceived his foot slipping and recalled moisture, yet he could not identify precisely where that foot landed. Store personnel did not observe water after the incident, and the contemporaneous account raises a possible knee-related mechanism. SUMF ¶¶ 15–19, 28–36; Shivick Dep. at 23:5–10; Bergman Rep. at 2, 7. Bergman did not reconstruct the physical sequence of the event or evaluate the possibility that Heckler's knee condition contributed to it. ECF No. 32-2 at 7–8. Bergman's expertise in walkway safety does not, without additional medical or biomechanical expertise, provide a foundation for ruling out Heckler's knee condition as a cause of the fall. Separately, his report identifies no accident reconstruction or other reliable method for determining that moisture at the mat-to-concrete transition, rather than a knee-related event, actually caused this fall. He may identify the hazards associated with the mat's configuration, but he may not present either competing causal explanation as conclusively resolved by his engineering analysis.

Bergman may, therefore, state that, assuming the facts supported by the trial evidence, increased mat coverage or different maintenance practices would have reduced the risk of a moisture-related slip. He may not, however, offer a definitive expert opinion that those precautions would have prevented Heckler's particular fall or that a medical or biomechanical cause can be ruled out. The methods described in his report do not support either conclusion. Nor may he opine that Whole Foods was legally negligent, that Heckler exercised legally reasonable care, or that the store violated the law as a matter of legal conclusion. *Berckeley*, 455 F.3d at 217–18. Plaintiffs remain free to argue inferences about negligence and causation from the admitted testimony and other evidence.

The motion to exclude will accordingly be granted in part and denied in part. These limits govern the opinions disclosed in the existing report. They do not permit new expert theories or

undisclosed analyses at trial. The parties may seek clarification before trial if a particular proposed question falls near the line drawn here.

## IV. MOTION FOR SUMMARY JUDGMENT

Excluding Bergman's definitive opinions about the cause of the fall does not require summary judgment. Plaintiffs may still rely on his admissible walkway safety testimony, witness accounts, and other circumstantial evidence to establish negligence.

### A. A Reasonable Jury Could Find a Dangerous Condition Caused Heckler's Fall.

Under Pennsylvania law, the mere occurrence of a fall does not establish negligence. *Martino*, 213 A.2d at 610. A plaintiff must present evidence that a dangerous condition existed and caused the alleged injuries. *See Krishack v. Milton Hershey Sch.*, 145 A.3d 762, 765–66 (Pa. Super. Ct. 2016). Causation, however, may be established through circumstantial evidence, provided the inference rests on evidence rather than conjecture. *First v. Zem Zem Temple*, 686 A.2d 18, 21–22 (Pa. Super. Ct. 1996). A plaintiff need not eliminate every other possible cause of the accident or establish its precise mechanics with mathematical certainty. *Id.* at 22. Rather, the evidence must permit a jury to reasonably conclude that the alleged condition caused the plaintiff's injuries. *Id.* at 21–22; *Smith v. Bell Tel. Co.*, 153 A.2d 477, 479–80 (Pa. 1959).

In *First*, the Pennsylvania Superior Court reversed summary judgment where a woman fell while dancing on a temporary dance floor containing a slippery, discolored area and a raised metal edge. 686 A.2d at 19–20. Although the woman fell approximately three to four feet from the identified defects, the court concluded that circumstantial evidence, including testimony describing the hazardous conditions and the location of the fall, permitted a reasonable inference of causation. *Id.* at 21–22. The court explained that where a plaintiff identifies the nature and location of a fall, a jury may determine whether a defect within that area caused the injury. *Id.* at 21. The plaintiff's inability to establish precisely which defect caused the fall did not render the

causal connection speculative. *Id.* at 22. The critical inquiry was whether the evidence provided a reasonable basis to connect the identified hazard to the accident. *Id.*

Here, Whole Foods emphasizes that Heckler could not identify a puddle of water or determine whether his foot was on the PIG mat, the concrete floor, or both when he fell. ECF No. 31-3 at 5–8; ECF No. 35 at 2–3. Yet his testimony identifies more than the mere occurrence of a fall in an area where moisture was sometimes present. Heckler testified that the mat appeared damp and discolored, that he observed mist-like droplets around the mat and shininess on the concrete, and that his left foot slipped out from beneath him as he was stepping from the mat toward the concrete. Heckler Dep. at 76:24–80:15, 86:12–19, 87:5–23. He further attributed the slip to moisture. *Id.* at 87:19–23. The record also establishes that the fall occurred adjacent to the wet-wall misting system, where Whole Foods maintained protective matting. SUMF ¶¶ 11–14. As in *First*, the evidence identifies both a potentially hazardous condition and the area in which the plaintiff encountered it. Heckler's uncertainty about the precise position of his foot does not eliminate the reasonable inference that moisture at the mat-to-concrete transition caused him to slip.

Whole Foods nevertheless identifies evidence supporting a different explanation. Shivick testified that he observed no wetness after the fall, other store personnel did not identify standing water, and Heckler had a preexisting right-knee condition that may have contributed to the incident. Shivick Dep. at 23:5–10; SUMF ¶¶ 28–36. Those circumstances distinguish this case from one in which the cause of a fall is undisputed, but they do not compel summary judgment. In *Krishack*, the Superior Court affirmed summary judgment because the plaintiff failed to establish that the harmful substance allegedly responsible for his illness was present at the defendant's property. 145 A.3d at 766–67. Here, by contrast, Heckler testified to observing the alleged hazard

in the area of his fall and described a slipping motion consistent with encountering moisture. Although a jury could credit Whole Foods's competing evidence and conclude that Heckler fell for another reason, resolving that dispute requires weighing testimony and drawing factual inferences. Viewed in Plaintiffs' favor, the evidence provides a sufficient basis for a reasonable jury to conclude that moisture on the walking surface caused Heckler's fall. Summary judgment on this ground is, therefore, unwarranted.

### B. A Reasonable Jury Could Find That Whole Foods Created or Had Notice of the Dangerous Condition.

Under Pennsylvania law, a plaintiff injured by a transitory condition on business premises must establish that the defendant created the condition or had actual or constructive notice of it. *Moultrey* 422 A.2d at 596–97. Where the defendant or its agents created the condition, separate proof of notice is unnecessary. *Id.* at 596. Likewise, a jury may find actual notice where the defendant knew the dangerous condition frequently recurred. *Id.* Otherwise, the plaintiff must show that the defendant knew of the condition or that it existed long enough to have been discovered through reasonable care. *Id.* at 596–97.

Whole Foods argues that Plaintiffs cannot establish notice because they have not identified the source or duration of the alleged moisture. ECF No. 31-3 at 9–11. It relies principally on *Martino v. Great Atlantic & Pacific Tea Co.*, 213 A.2d 608 (Pa. 1965), and *Myers v. Penn Traffic Co.*, 606 A.2d 926 (Pa. Super. Ct. 1992). In *Martino*, the Pennsylvania Supreme Court affirmed a nonsuit where a customer slipped on a grape in a supermarket aisle. 213 A.2d at 609–10. Although grapes frequently fell to the floor, the plaintiff presented no evidence explaining how the particular grape arrived there or how long it had remained. *Id.* at 610. Similarly, in *Myers*, the Superior Court affirmed summary judgment because evidence that employees regularly dropped produce while restocking displays did not establish that employees had stocked the display near the time of the

accident or caused the particular grape to be on the floor. 606 A.2d at 929–31. In both cases, the evidence established a general risk of falling produce but failed to connect the dangerous condition to the defendant's conduct or notice.

The record here permits a different inference. Plaintiffs identify a specific, store-controlled source of moisture: the wet-wall misting system. They contend that surveillance footage shows the system activating approximately every six minutes, with mist extending beyond the produce display toward the walking surface. Pls.' Resp. SUMF ¶ 19. Whole Foods also maintained absorbent matting in front of the display, which assistant store leader Carly Ward described as a precaution against water accumulating in an area that could become wet. Bergman Rep. at 11 (summarizing Ward Dep. at 80–81). Heckler further testified that he observed dampness on the mat and moisture on the surrounding concrete. Heckler Dep. at 76:24–80:15, 87:5–23. Unlike the evidence in *Martino* and *Myers*, this evidence provides a basis from which a jury could connect the alleged condition to Whole Foods' own operations rather than an isolated spill of unknown origin.

Certainly, the existence of a misting system and protective matting does not, by itself, establish that water reached the floor or that Whole Foods created a dangerous condition. Whole Foods disputes Plaintiffs' interpretation of the surveillance footage, and its employees testified that they did not observe water after the fall. Nevertheless, viewed in Plaintiffs' favor, the evidence of recurring misting, the purpose and placement of the matting, and Heckler's observations would permit a reasonable jury to find that Whole Foods created or had notice of moisture on the walking surface. Under that theory, Plaintiffs need not establish precisely how long the particular moisture remained on the floor before the accident. *See Moultrey*, 422 A.2d at 596–97. Accordingly, a genuine dispute of material fact precludes summary judgment on the issue of notice.

### C. Genuine Disputes of Material Fact Preclude Summary Judgment on Plaintiffs' Remaining Claims.

The record leaves other issues for trial: the precise mat configuration at the moment of the fall, whether moisture existed at the point of contact, what an adequate inspection would have revealed, and the relative contribution, if any, of Heckler's medical history. Whole Foods has not shown that no reasonable jury could resolve all essential liability elements for Plaintiffs. The motion seeks judgment on the entire action. The underlying negligence claim survives, so the derivative loss-of-consortium claim of Antonia Lucia Heckler is not disposed of on the grounds advanced here.

This ruling expresses no view on the credibility of Heckler or the store employees, on the comparative fault of the parties, or on the amount of recoverable damages. The parties may challenge the sufficiency of the evidence at trial through the procedures provided by the Rules. At this stage, the Court determines only that trial worthy disputes remain.

## V. CONCLUSION

For the foregoing reasons, the Court will GRANT IN PART and DENY IN PART Whole Foods's Motion to Exclude the Testimony of Keith A. Bergman, ECF No. 32, and DENY Whole Foods's Motion for Summary Judgment, ECF No. 31. An appropriate Order follows.